UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re:<br><br>**DANIEL PAUL HEALY**<br>**JILL MICHELLE HEALY**<br><br>Debtors | Bankruptcy No. 11-31306<br>(Chapter 7) |
| **Larry M. Stiles, Trustee**<br>**In Bankruptcy for Daniel Paul Healy**<br>**and Jill Michelle Healy**<br><br>Plaintiff,<br><br>vs.<br><br>**THOMAS HEALY, NORTH CAROLINA**<br>**DEPARTMENT OF REVENUE, I.B.S.A.,**<br>**INC, d/b/a INDEPENDENT BUILDERS**<br>**SUPPLY ASSOCIATION, INC., and**<br>**RAYMOND V. JONES,**<br><br>Defendants | Adv. Proceeding No.<br>13-<br><br><br>**COMPLAINT** |

The Plaintiff, Larry M. Stiles (the "Trustee"), as Trustee in bankruptcy for the parties identified above as Debtors (the "Debtors"), by and through counsel, files the following Complaint against Defendants.

**SUMMARY OF ISSUES**

The male debtor in this matter owned certain luxury real property located at 130 Bluebird Lane in Weddington, (Union County) North Carolina.  As represented in the Debtors' bankruptcy petition, the property was wholly encumbered with debt, and was going to be sold at a loss as a "short sale" or through foreclosure if no appropriate offer could be obtained for its purchase.  However, Debtors failed to disclose in their bankruptcy petition that a purported deed of trust in favor of the male debtor's brother, Thomas Healy, had been recorded not at the time it was drafted, but almost eleven months later.  Debtors contended the later-recorded deed of trust was not known to them until after the bankruptcy had been filed.  Because the Trustee relied on the representations of the Debtors as sworn in the petition and at the first meeting of creditors, the Trustee did not discover the avoidable preference to Thomas Healy in the amount of $1,829,238 until after the statute of limitations had run.

In conducting preliminary informal discovery on this and other issues, the Trustee discovered facts showing, at the very least, the male debtor knew the deed of trust in favor of his brother was not recorded until almost one year after its execution, and that the male debtor took affirmative action to have the deed of trust recorded at the later date. Yet no disclosure of the later-filed deed of trust was made to the Trustee. It also appears the male debtor, in likely collaboration with his brother, has allowed the destruction of records, has failed to file tax returns that would require disclosure of facts evidencing transfer of assets of a wholly-owned corporation, and has otherwise taken steps to proactively prevent proper administration of the bankruptcy estate, to the detriment and prejudice of all creditors other than his brother, who may not hold a valid debt, and who may have already received partial or full payment on any actual debt.

It is in this context that the Trustee files this declaratory judgment action, seeking the assistance of the Court in determining the parties' relative interests in the $1,493,199.13 in net proceeds from the sale of 130 Bluebird Lane. The Trustee seeks in this proceeding to conduct full discovery to determine the valid debts, the valid lienholders, and to uncover the facts previously hidden from the Trustee that appear, even at this early stage, to amount to fraud.

## PARTIES AND JURISDICTION

1. A voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Code") was filed by the Debtors on 18 May 2011 and Larry M. Stiles subsequently was appointed as the Chapter 7 Trustee.

2. Defendant Thomas Healy (hereinafter "Healy") is, upon information and belief, a resident of Clifton, Virginia. Healy filed a proof of claim in the amount of $1,911,558.00 for a "mortgage" on 130 Bluebird Lane in Weddington, Union County, North Carolina, in the Debtors' bankruptcy case (Claim No. 7), thereby submitting to the jurisdiction of this Court. Healy's deed of trust was dated 23 October 2009 and was recorded in Union County on 21 September 2010.

3. The North Carolina Department of Revenue is the taxing authority for the State of North Carolina ("NCDOR"). NCDOR filed a proof of claim in the Debtor's bankruptcy case in the amount of $100,288.49 (Claim No. 15) related to tax years 2003, 2005-08. NCDOR included with its proof of claim copies of the liens docketed in Union County, North Carolina on 1 October 2010.

4. I.B.S.A., Inc., d/b/a Independent Supply Association, Inc. ("IBSA") is a North Carolina corporation. IBSA is the holder of a Johnston County, North Carolina judgment against the male debtor in the amount of $288,165.57. The judgment was transcribed to Union County, North Carolina on 21 June 2010. IBSA filed a proof of claim in the Debtors' bankruptcy case (Claim No. 3), thereby submitting to the jurisdiction of this Court.

5. Raymond V. Jones ("Jones) is, upon information and belief, a Mecklenburg County, North Carolina resident and is the holder of a Mecklenburg County judgment against the male debtor in the amount of $697,058.67. The judgment was transcribed to Union County,

2

North Carolina on 10 November 2010. Jones has not filed a proof of claim in the Debtors' bankruptcy case.

6.  This is a complaint filed pursuant to Fed. R. Bankr. P. 7001(1), (2) and (9), and this adversary proceeding is related to the above-referenced bankruptcy case now pending before this Court. In this adversary proceeding, the Trustee as Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 and 11 U.S.C. § 544(a)(3) of the Bankruptcy Code determining the parties' relative interests in the net sales proceeds from the sale of 130 Bluebird Lane, Weddington, North Carolina, less the realtor fee of $20,000.00 to be paid to Peters & Associates by Court order with consent of all relevant parties, and any other amounts ordered to be paid (the "Proceeds").

7.  Generally, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1334 because this is a proceeding arising under Title 11 (11 U.S.C. §101 et seq., hereinafter "Title 11") or arising in or related to a case under Title 11, because it involves the enforcement of rights granted by the United States Bankruptcy Code, and because of the Order entered by the Judges of the United States District Court for the Western District of North Carolina on 30 July 1984 (the "Referral Order") pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 referring to this Court all core proceedings arising under Title 11, or arising in a case under Title 11, and all proceedings that are not core proceedings but that are otherwise related to a case under Title 11.

8.  Venue for this adversary proceeding is properly with this Court pursuant to 28 U.S.C. §1409.

9.  Specifically, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(b)(2), and the Referral Order, because this is a core proceeding as defined in 28 U.S.C. §157(b)(2) in that it concerns, inter alia, a determination of the relative rights of the parties in property of the estate under 11 U.S.C. § 541.

## ALLEGATIONS OF FACT

10.  In the Debtors' bankruptcy petition, Question 10 in the Statement of Financial Affairs ("SOFA 10") stated in part, "List all … property … transferred either absolutely or as security within two years immediately preceding the commencement of the case …"

11.  In the Debtors' originally-filed SOFA 10, the Debtors answered "None." This was a statement made under oath and made subject to federal penalty of perjury.

12.  The Debtors answer of "none" in SOFA 10 was false.

13.  On 21 September 2010, the Debtors granted to Healy, the male debtor's brother, a deed of trust (the "Deed of Trust") in the amount of $1,829,238.00 on real property located at 130 Bluebird Lane, Weddington, North Carolina ("Bluebird"). The male debtor signed a note eleven months prior, on 23 October 2009 in the same amount (the "Note").

3

14. The Deed of Trust was recorded approximately eight months before the date the Debtors' petition was filed.

15. Healy filed Claim No. 7 in the Debtors' bankruptcy case in the amount of $1,911,558.00, which included interest on the Note.

16. Bluebird was valued in the Debtors' petition at $1,800,000. As scheduled, Bluebird was grossly under water, between the Deed of Trust, taxes, and judgment liens to the creditors listed herein as Defendants.

17. Unbeknownst to the Trustee, the Debtors represented to prospective purchasers that they owned Bluebird. Without the Trustee's knowledge, the Debtors entered into a contract on or about 28 March 2013 for the sale of Bluebird with the Debtors listed as the sellers. The sale contract was for $1,600,000.

18. The Trustee did not learn of the Bluebird sale contract until 29 May 2013 when he was contacted by Debtors' counsel regarding the sale.

19. The Trustee did not discover that the Deed of Trust was within the preference period until May 29, 2013, when Debtors' counsel requested the Trustee consent to relief from stay for Healy, who purported to represent Healy even while representing Debtors.

20. Ultimately, the Trustee entered into a contract with the prospective Bluebird buyers under the same terms negotiated by Debtors. The sale closed and $1,493,199.13 in Proceeds were deposited into the trust account of the Trustee's attorney.

21. The Proceeds will be reduced by payment of a $20,000 commission to the listing real estate company, Peters & Associates, and payment of the first lienholder, IBSA, pursuant to orders submitted by consent of the relevant parties, with the exception of Healy, who did not consent to payment of IBSA on its claim.

22. After the sale closing, the Trustee commenced informal discovery regarding the Healy Note and Deed of Trust and the underlying transactions. Not all documents and information requested have been produced to date.

23. Healy alleged in his proof of claim and/or provided the Trustee documents purporting to show that he loaned the male debtor $550,000 in January 2009.

24. Healy alleged in his proof of claim and/or provided the Trustee documents purporting to show that he loaned the male debtor $1,279,238 on 8 April 2009.

25. The Debtors stated to the Trustee through counsel and in interrogatory responses that the male Debtor signed the Note for $1,829,238 on or about 23 October 2009, and that the

4

Debtors signed the Deed of Trust for $1,829,238 at the same time, intending that the Deed of Trust be filed at or immediately following their execution.

26. Healy stated to the Trustee through counsel and in interrogatory responses that the male Debtor signed the Note for $1,829,238 on or about 23 October 2009, and that the Debtors signed the Deed of Trust for $1,829,238 at the same time, and that Healy intended that the Deed of Trust be filed at or immediately following its execution.

27. Healy's proof of claim attached the 2009 Note and the 2010 Deed of Trust as the basis for the amounts owed in the proof of claim.

28. The Deed of Trust was not recorded until 21 September 2010, almost one year after its execution.

29. The Deed of Trust was recorded just days ahead of a North Carolina Department of Revenue Certificate of Tax Liability dated 24 September 2010. The North Carolina Department of Revenue Tax Liens were filed 1 October 2010 in the amount of $40,427.84 (2008 tax year), $27,739.89 (2005 tax year), and $32,958.29 (2003 and 2007 tax years).

30. The preference statute of limitations under 11 U.S.C. § 546(a)(1)(a) ran on 18 May 2013, eleven days prior to the Trustee's discovery of the filing date of the Deed of Trust.

31. Healy stated through counsel and in interrogatory responses that he was unaware the Deed of Trust was not recorded until 21 September 2010.

32. Healy stated through counsel that the failure of the real estate attorney hired to draft and record the Note and Deed of Trust, John R. ("Jack") Lynch, Jr. (now deceased), to record the Deed of Trust on or immediately after 23 October 2009 constituted legal malpractice.

33. The Debtors stated in responses to interrogatories that until their then-bankruptcy counsel, Brian Bain, told them on or about 27 June 2013, they were not aware that the Deed of Trust filing had been delayed approximately eleven (11) months.

34. Despite Debtors' and Healy's contention that they were unaware the Deed of Trust was not recorded until 2010, a review of the relevant records revealed that check number 7055, from the male debtor's company Construction Applicators, Inc. – North Carolina ("CAI"), was dated 19 August 2010. That check in the amount of $289.00 was made payable to Jack R. Lynch, Jr. PA and was signed by Daniel Healy.

35. Check number 7055 was deposited into Attorney Lynch's trust account on 17 September 2010.

36. On 17 September 2010, Attorney Lynch wrote a check from his trust account payable to John R. Lynch, Jr., PA in the amount of $250.00 with a memo of "HEALY Settlement Agents Fees."

37. On 17 September 2010, Attorney Lynch wrote a check from his trust account to the Union County Register of Deeds in the amount of $39.00 with the memo "HEALY Government Charges."

38. Upon information and belief, the male debtor and Healy have known at all times relevant that the Deed of Trust was not recorded until 21 September 2010.

39. Upon information and belief, the male debtor and Healy directed Attorney Lynch to wait to record the Deed of Trust until at least 17 September, 2010.

40. Upon information and belief, the male debtor and Healy delayed the recording of the Deed of Trust until it became clear that the filing of the North Carolina Department of Revenue tax lien was imminent.

41. Upon information and belief, the male debtor and Healy may have engaged in fraudulent activities to protect the financial position of the Debtors and/or Healy, or to protect assets of the Debtors from the Debtors' valid creditors.

42. In addition to the above, Debtors have not filed their 2011 or 2012 tax returns.

43. The male debtor is listed as CAI's registered agent, president, and treasurer with the North Carolina Secretary of State.

44. The male debtor is the holder of 100% of CAI's shares.

45. In Debtors' Petition Schedule B – Personal Property – 100 shares of CAI stock was scheduled as an asset of the male debtor. The value listed for CAI was zero.

46. The Trustee has requested CAI's records, including financial documents, from 2009 through the cessation of its business.

47. Through counsel, the male debtor has stated that CAI ceased operation in September 2012.

48. Through counsel, Debtors have stated that all 2012 CAI records were destroyed by subcontractors hired to clean out CAI's former office space.

49. CAI has not filed its 2010-2012 tax returns.

6

50. Through counsel, Debtors have provided unfiled copies of CAI tax returns for tax years 2009-2011.

51. Through counsel, Debtors have indicated that the 2012 CAI return has not been prepared or filed.

52. Upon information and belief, the funds provided by Healy to the male debtor went directly to CAI operations and payment of its debt.

53. The CAI tax returns for tax year 2009-2011 do not reflect the debt to Healy, either directly or as a loan from its sole shareholder.

54. Schedule L of the 2011 CAI tax return (the same year Debtors filed bankruptcy) listed $509,043 in "trade notes and accounts receivable" and $479,987 in "buildings and other depreciable assets."

55. Schedule L of the 2011 CAI tax return listed $1,855,220 in "total assets."

56. In the 2011 CAI tax return, under "additional listed property statement, ten separate vehicles are listed (2000 GMC Sonoma, 2000 Ford Excursion, 2000 Chevy Silverado, 1999 Chevy Tahoe, RV Camper, GMC Denali, 2003 Avalanche, 2003 Silverado, 2004 Avalanche, and 06 Truck).

57. The Trustee has not, as of the date of this filing, been able to obtain relevant books and records to show the whereabouts of CAI's assets, including whether they were transferred to Healy.

58. The Trustee has been provided nothing beyond the unfiled CAI returns that would provide him information regarding CAI's value, or the assets that remain in CAI's name.

59. The Trustee has been provided nothing beyond the unfiled CAI returns that would provide him information about any transfers of assets from CAI to third parties.

60. Healy owns Construction Applicators, Inc., a Virginia corporation ("CAI-VA").

61. Upon information and belief, CAI-VA is engaged in the same, or similar, business as CAI.

62. The Trustee has not been provided the requested financial records of CAI to enable the Trustee to determine whether improper, fraudulent, or otherwise avoidable transfers have been made between CAI and CAI-VA.

7

63. Such action by Healy could be the basis for the application of the doctrine of equitable tolling, thus allowing the Trustee to avoid Healy's Deed of Trust for the benefit of the bankruptcy estate's creditors.

## CLAIM FOR RELIEF
(Declaratory Judgment)

64. The previous allegations in this Complaint are incorporated by reference.

65. The attorney for the Trustee holds the Proceeds, less the amounts ordered to be paid to Peters & Associates by consent of the relevant parties, and any other amounts ordered by the Court to be paid from the Proceeds.

66. So much data and documents have been withheld that the Trustee cannot determine the proper parties to whom the funds should be paid, and in what amounts.

67. The Trustee is entitled to a declaratory judgment under 28 U.S.C. § 2201 determining the parties' relative interests in the Proceeds of 130 Bluebird Lane.

**WHEREFORE**, Larry M. Stiles, as Plaintiff and as Trustee in Bankruptcy for the Debtors identified above, respectfully prays the Court for the following relief:

1. That the Court enter a declaratory judgment under 28 U.S.C. § 2201 determining the Defendants' relative interests in the Proceeds held by the Trustee; and

2. For such other and further relief as the Court deems just and proper.

This the 23rd day of December, 2013.

    */s/ Langdon M. Cooper*

    Langdon M. Cooper
    N.C. State Bar No. 936

    */s/ Jennifer A. Youngs*

    Jennifer A. Youngs
    N.C. State Bar No. 23925

    MULLEN HOLLAND & COOPER P.A.
    *Attorneys for the Trustee*
    301 South York Street, Post Office Box 488
    Gastonia, NC 28053-0488
    Telephone: (704) 864-6751
    Facsimile: (704) 861-8394
    Email: lcooper@mhc-law.com
    Email: jyoungs@mhc-law.com

**B104 (FORM 104) (08/07)**

| **ADVERSARY PROCEEDING COVER SHEET**  (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**  (Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)  ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin  ☐ Creditor  ☐ Other  ☐ Trustee | **PARTY** (Check One Box Only)  ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin  ☐ Creditor  ☐ Other  ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

---

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

---

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR || BANKRUPTCY CASE NO. ||
| DISTRICT IN WHICH CASE IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) ||||
| DATE ||| PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.